Revised May 3, 2001

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 00-50262**

---

**JAMES A. BETTERSWORTH,**

**Plaintiff-Appellant,**

**VERSUS**

**FEDERAL DEPOSIT INSURANCE CORPORATION; OFFICE OF THE**
**COMPTROLLER OF THE CURRENCY; BOARD OF THE FEDERAL RESERVE;**
**FEDERAL RESERVE BANK OF KANSAS CITY,**

**Defendants-Appellees.**

---

Appeal from the United States District Court
For the Western District of Texas

---

April 12, 2001

Before REAVLEY, SMITH, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Plaintiff James A. Bettersworth appeals the district court's
order granting summary judgment in favor of defendants, the Federal
Deposit Insurance Corporation (FDIC), the Office of the Comptroller
of the Currency (Office of the Comptroller of the Currency), the
Board of Governors of the Federal Reserve System (the Board), and
the Federal Reserve Bank of Kansas City (the Reserve Bank), and

dismissing his claims.  We affirm.

## I.  BACKGROUND

Bettersworth has an extensive background in the banking industry, which is well documented in the summary judgment record before the Court.  Between 1973 and 1980, Bettersworth was employed by the First National Bank of Seguin.  In 1981, Bettersworth formed Southwest Commercial Capital, Inc. (SWCC), which is described as a venture capital company.  In 1983, Bettersworth founded First Commercial Bank of Seguin, Texas (FCB), a federally chartered bank, where he served as Chief Executive Officer and Chairman of the Board until 1989.  In 1984, Bettersworth formed Southwestern ComCorp, Incorporated (ComCorp), a non-bank holding company.  Bettersworth also formed a second small business investment company called Southwestern Venture Capital (SVC).  Bettersworth placed SWCC and SVC under the umbrella of ComCorp.  Bettersworth owned either a participatory interest or a management position or both in these ventures.  Bettersworth also owned a controlling interest or management position in other related financial institutions.

In 1987, ComCorp acquired the Republic Bank of Tecumseh, Oklahoma (RBT) by foreclosure, and Bettersworth assumed control of RBT.  The Bank Holding Company Act (BHCA), 12 U.S.C. § 1841-1850, provides that no company may gain control of a bank without prior approval of the Board of Governors of the Federal Reserve System. *See* 12 U.S.C. § 1841; *id*. § 1842(a).  The Act contains an exception

2

to the requirement for *prior* Board approval when controlling interest in a bank is obtained in the course of collecting upon a previously contracted debt.  12 U.S.C. § 1841(a).  In such a case, the company assuming control of the bank must divest itself of the acquired bank shares within two years.  *Id*. That two-year period may be extended one year at a time, but the maximum time period during which a company may hold shares giving it a controlling interest in a bank is five years.  *Id*.  ComCorp's foreclosure of a debt owed by one of RBT's officers and guaranteed by RBT assets fell within the foreclosure exception to the requirement for prior Board approval.  Moreover, ComCorp received an extension, which permitted ComCorp to hold RBT for up to five years, or until December 1993, before securing Board approval or divesting itself of the RBT assets.

In 1989 or 1990, Bettersworth resigned from his positions with FCB and RBT.  Bettersworth also lost control of ComCorp.  In early 1993, Bettersworth and a partner regained controlling interest in ComCorp.  In October 1993, ComCorp filed an application for bank holding company (BHC) status under the BHCA with the Federal Reserve Bank of Kansas City (the Reserve Bank).  Federal Reserve Banks are authorized to receive and review applications for BHC status.  The controlling regulations permit the Reserve Bank to either approve the application or to refer it to the Board.  *See* 12 C.F.R. § 225.15.  Thus, the Reserve Bank has no authority to

finally deny an application for BHC status. When considering whether to approve an application for BHC status, the Board is authorized to consider *inter alia* "the financial and managerial resources and future prospects of the company or companies and the banks concerned," *id*. § 1842(c)(2), which in turn includes "consideration of the competence, experience, and integrity of the officers, directors, and principal shareholders of the company or bank, *id*. § 1842(c)(5).

ComCorp's application for BHC status proposed that ComCorp retain 100 percent of RBT. The application disclosed Bettersworth's prior affiliations with FCB and RBT. Accordingly, Pamela Johnson, the Reserve Bank official assigned to review the application, began retrieving and reviewing the records maintained by other banking regulatory agencies on those banks.

Johnson reviewed OCC records relating to the financial condition and management of FCB.[1] Those records included unfavorable assessments of both the condition of the bank and the bank's management, including Bettersworth. Records from bank examinations conducted shortly after Bettersworth left FCB reported that the bank was in bad financial shape and suggested that Bettersworth's placement of SBA loans generated by ComCorp or its

---

[1]The Office of the Comptroller of the Currency (OCC) is the primary federal regulator of nationally chartered banks. OCC is involved in this case because of Bettersworth's affiliation with FCB, a federally chartered bank that was a member of the Federal Reserve System.

4

affiliates contributed to the bank's poor financial status. Johnson also reviewed the OCC's Supervisory Monitoring System (SMS), a confidential database maintained by the OCC and accessible with a password by other banking regulatory agencies. The SMS likewise contained an entry blaming Bettersworth and another individual for the "bank's poor condition," and concluding that "these individuals should not be approved in an executive capacity at a troubled institution." Bettersworth identifies this statement in the OCC database as an adverse determination within the meaning of the Privacy Act, 5 U.S.C. § 552a(g)(1)(c).

Johnson also reviewed FDIC[2] records relating to the financial condition and management of RBT. Those records included unfavorable assessments of both the condition of the bank and the bank's management, including Bettersworth. Records from examinations conducted after Bettersworth left RBT reported that the bank was in bad financial shape and suggested that Bettersworth's placement of SBA loans generated by ComCorp or its affiliates contributed to the bank's poor financial status. Certain records also suggested that Bettersworth and another

---

[2] FDIC is a corporation created by Congress, which insures the deposits of banks and savings associations. FDIC is also the primary federal regulator for state chartered banks that are not members of the Federal Reserve System. FDIC is involved in the case because of Bettersworth's affiliation with RBT, a state chartered bank that was not a member of the Federal Reserve System.

5

individual forced RBT into foreclosure so that SWCC could obtain the assets of RBT without having to comply with the BHCA.

Johnson also telephoned OCC and FDIC examiners familiar with FCB and RBT examinations and discussed these matters with the examiners. Johnson also consulted internal Reserve Bank records. Through her investigations, Johnson learned that the banks had charged off large loans made to Bettersworth or his companies. Bettersworth's personal guarantee on one such loan had forced his own personal bankruptcy. In sum, Johnson's investigation generated significant questions concerning, among other things, the RBT foreclosure, Bettersworth's decision to place a substantial number of SBA loans generated by his own companies with banks which he also controlled, and Bettersworth's failure to honor or default upon certain loans extended to him personally or to his companies by the banks which he managed. Johnson eventually authored a memo to Reserve Bank vice-president Stephen McBride, setting out the problems with ComCorp's BHCA application.

On November 5, 1993, Reserve Bank vice-president McBride issued a letter stating that the Reserve Bank had completed its review and identified several areas of concern with respect to the application. The areas of concern were stated in some detail and specific questions were posed at the end of the letter, the answers to which could have significantly enhanced the possibility of approval. The letter concluded that, based upon the existing

6

information, the prospects for approval were "extremely dim," and that any further application would be considered directly by the Board. ComCorp did not, however, pursue the application further by providing the specific information requested in an amended application to the Board. Rather, ComCorp abandoned the application and negotiated the sale of RBT, which closed in early 1994.

In 1995, Bettersworth decided he wanted to start a new bank in Lakeway, Texas and began trying to clear his name. After informal efforts failed, Bettersworth made Privacy Act requests in October 1995. Bettersworth requested records on himself, stating three variations on his name. The agencies responded that they either did not have records responsive to his request or that the documents they had were not subject to the Privacy Act. Bettersworth subsequently learned that the agencies maintained confidential records relating to bank examinations that sometimes contained comments about bank management. Bettersworth made another Privacy Act request for those records, which was denied because the records were not kept in a "system of records" tied to his name. There does not appear to be any dispute about the fact that these records were maintained, in accordance with the agencies' regulatory purpose, in files on the banks with which Bettersworth was affiliated rather than in a file on Bettersworth.

7

## II.   PROCEDURAL HISTORY

In August 1997, Bettersworth filed suit claiming that the defendant agencies violated his rights under the Privacy Act, 5 U.S.C. § 552a.   Bettersworth raised three claims.   First, Bettersworth claimed that the agencies denied his request for access to information about him in a Privacy Act system of records, in violation of 5 U.S.C. § 552a(d)(1) (obligating an agency to provide access to covered records); *see also **id**.* § 552a(g)(1)(B) (providing a civil remedy for violation of § 552a(d)(1)).   Second, Bettersworth claimed that the agencies made a number of adverse determinations about him on the basis of inaccurate and incomplete records, in violation of 5 U.S.C. § 552a(g)(1)(C).   Finally, Bettersworth claimed that the agencies violated subsection 552a(e)(1) (requiring that agencies maintain only such records as are required to perform a legitimate agency function) and subsection 552a(e)(7) (prohibiting the maintenance of records describing how an individual exercised First Amendment rights unless authorized by statute or the subject individual) "in such a way as to have an adverse effect on" him. *See* 5 U.S.C. § 552a(g)(1)(D).[3]

---

[3]Bettersworth also alleged that the agencies violated subsection 552a(e)(5) which requires agencies to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."   This statutory obligation is made enforceable by substantively identical language in subsection

In January 1998, the agencies filed a motion to dismiss, which was denied. In February 1999, Bettersworth amended his complaint to allege additional facts in support of his three Privacy Act claims. In June 1999, Bettersworth moved for partial summary judgment on the access claim. That same month, the agencies filed a motion to dismiss, or in the alternative, for summary judgment. The district court referred the motions to a magistrate judge, who recommended that the agencies' motion be granted. Bettersworth filed objections, and the district court conducted a de novo review, after which the district court granted the agencies' motion and dismissed all of Bettersworth's claims with prejudice. Bettersworth filed a timely notice of appeal.

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. A moving party may rely upon the absence of evidence to support an essential element of the non-movant's case. *See Duffy v. Leading Edge Prods.*, 44 F.3d 308, 310 (5th Cir. 1995). Once that showing is made, the non-moving party is required to come forward with specific and credible facts that would support a reasonable inference of liability with respect to the essential elements of the non-moving party's claims. *Id*. Thus, the district court was charged with examining the

---

552a(g)(1)(C). Bettersworth's allegation under subsection 552a(e)(5) is therefore subsumed by his allegation under subsection 552a(g)(1)(C).

9

summary judgment evidence to determine whether there was evidence supporting each of the essential elements of Bettersworth's access, adverse determination, and adverse effect claims under the Privacy Act. We review the district court's decision granting summary judgment de novo, applying the same standards as did the district court. *Id*. at 312.

### III. BETTERSWORTH'S ACCESS CLAIM

Subsection 552a(d)(1) of the Privacy Act provides that each agency that maintains a system of records shall:

> (1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him, except that the agency may require the individual to furnish a written statement authorizing discussion of that individual's record in the accompanying person's presence.

5 U.S.C. § 552a(d)(1). Subsection 552a(a)(5) defines "system of records" as follows:

> (5) the term "system of records" means a group of any records under the control of any agency from which the information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.

5 U.S.C. § 552a(a)(5). Subsection 552a(g)(1) provides a civil remedy for violation of subsection 552a(d)(1).

The threshold issue in any claim alleging denial of access under the Privacy Act is whether the records sought by the

10

plaintiff are maintained in a "system of records" retrievable by an "identifying particular assigned to" the plaintiff. This qualifying language in the statute reflects a statutory compromise between affording individuals access to those records relating directly to them and protecting federal agencies from the burdensome task of searching through agency records for mere mention of an individual's name. Many of the published Privacy Act cases are aimed at giving meaning to this statutory requirement. *See*, *e.g.*, *Gowan v. United States Dep't of the Air Force*, 148 F.3d 1182, 1191 (10th Cir. 1998) (file marked "ethics" was not a surrogate identifier for plaintiff under ethics investigation and thus records were not accessible under the Privacy Act, even though the file contained information about the plaintiff); *Hudson v. Reno*, 130 F.3d 1193, 1206 (6th Cir. 1997) (records not accessible under the Privacy Act because not retrievable by the plaintiff's name); *Henke v. United States Dep't of Commerce*, 83 F.3d 1453 (D.C. Cir. 1996) (records not accessible under the Privacy Act, even though agency *could* search for the records by the plaintiff's name, because the agency *as a practical matter* did not use the information that way); *Cuccaro v. Secretary of Labor*, 770 F.2d 355, 359-60 (3d Cir. 1985) (documents relating to agency's investigation of accident involving plaintiff were not tied to plaintiff's name and thus not accessible under the Privacy Act); *Wren v. Heckler*, 744 F.2d 86, 90 (10th Cir. 1994) (records not accessible under the

11

Privacy Act because not retrievable by the plaintiff's name, even though the information related to plaintiff).

The district court held that the records Bettersworth wants, primarily information retrieved by Reserve Bank examiner Johnson from various agencies and then included in Reserve Bank files concerning ComCorp's application for BHC status, were not maintained in a system of records retrievable by Bettersworth's name, and were therefore not accessible under § 552a(d)(1). There does not appear to be any dispute about the fact that the records were maintained in files referencing the banks with which Bettersworth was associated, rather than Bettersworth personally. Further, there does not appear to be any dispute about the fact that the files were maintained for the purpose of discharging the responsibilities vested by federal law with the defendant agencies.

Bettersworth urges the Court to interpret the statute broadly to require that he be given access to the agencies' records in this case because the records pertained to him. Alternatively, Bettersworth maintains that the agencies used the bank files as surrogate identifiers for records pertaining to him. We decline to interpret the statute in a manner that would deny meaning to the statutory language requiring that the records be retrievable "by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5); *id*. § 552a(d)(1). Moreover, Bettersworth's assertion that the agencies

used the bank files as a surrogate identifier for information relating to him finds no support in the record. For these reasons, we affirm the district court's dismissal of Bettersworth's claim that he was denied access to records subject to disclosure under the Privacy Act.

## IV. BETTERSWORTH'S ADVERSE DETERMINATION CLAIM

Subsection 552a(g)(1)(C) provides a civil remedy whenever an agency:

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

5 U.S.C. § 552a(g)(1)(C). Bettersworth's adverse determination claim is premised almost entirely upon the Reserve Bank's handling of ComCorp's BHCA application. Specifically, Bettersworth claims that the following items constitute adverse determinations against him within the meaning of § 552a(g)(1)(C): (1) Reserve Bank vice-president McBride's November 5, 1993 letter informing ComCorp that the prospects for approval of its BHCA application were extremely dim, and that further applications would be reviewed directly by the Board; (2) oral statements made by McBride during a telephone conversation with Bettersworth's lawyers about the viability of ComCorp's BHCA application; (3) Reserve Bank examiner Johnson's

13

working papers and notes prepared in the course of her review of ComCorp's BHCA application; and (4) the entry in the OCC's SMS database flagging Bettersworth's role in the financial decline of FCB. The district court held that Bettersworth's adverse determination claim failed as a matter of law because none of the various statements and writings identified by Bettersworth constituted an "adverse determination" within the meaning of the statute.

The district court held that McBride's November 5, 1993 letter was the only item relied upon by Bettersworth which even potentially constituted an adverse determination. The remaining items concern information allegedly relied upon to draft that letter.[4] The district court held that McBride's November 5, 1993 letter did not constitute a determination because the letter identified other reasons for the Reserve Bank's disinclination to approve the application. The district court also suggested that ComCorp (or Bettersworth) decided not to pursue an application with

---

[4]On this point, we note that Bettersworth's allegations do not directly identify adverse determinations made by each and every defendant agency. To the contrary, Bettersworth premises his claim against the other defendants primarily upon the fact that the Reserve Bank accessed and relied upon records from the other agencies when making its determination. At least one court has recognized that such a connection may be sufficient to support liability. *See* **Dickson**, 828 F.2d at 36. Because we affirm the district court's decision that the items identified by Bettersworth do not constitute an adverse determination under the statute in any event, we need not and do not decide whether such a showing is sufficient in this Circuit.

14

the Board because there were no satisfactory answers to the legitimate questions asked in McBride's letter.

The agencies argue that the November 5, 1993 letter cannot be considered an adverse determination because the Reserve Bank had no authority to deny ComCorp's application. The controlling regulations permit only two courses of action; the Reserve Bank can either approve an application for BHC status or refer it to the Board for further consideration. *See* 12 C.F.R. § 225.15. Thus, the agencies maintain that there could be no determination unless and until ComCorp forwarded an application to the Board and it was finally denied. *See **Deters v. United States Parole Comm'n***, 85 F.3d 655 (D.C. 1996). Given that ComCorp abandoned that effort, the matter was terminated before an administrative determination could be made. In this same vein, the defendant agencies maintain that, even if the November 5, 1993 letter constituted a determination of any sort, it would be a determination against ComCorp, the company making the application, rather than against Bettersworth personally. Having reviewed the record, we are persuaded that the diverse grounds relied upon in the Reserve Bank's letter, coupled with the fact that ComCorp was the entity applying for BHCA status, provide adequate support for the district court's conclusion that the November 5, 1993 letter did not constitute an adverse determination against Bettersworth within the meaning of § 552a(g)(1)(C).

With regard to the remaining items identified by Bettersworth as adverse determinations, the agencies ask the Court to hold that the word "determination" as used in the statute must mean something akin to a formal or final administrative decision. We need not go that far in order to say that no determination was made in this case. At the very least, informal oral or written statements made in the deliberative process *about* a particular administrative determination do not constitute the determination itself. We therefore affirm the district court's conclusion that Bettersworth's adverse determination claim fails because there was no evidence of an adverse administrative determination against him. *See* 5 U.S.C. § 552a(g)(1)(C) (providing that the determination must be adverse "to the individual").

## V. BETTERSWORTH'S ADVERSE EFFECT CLAIM

Subsection 552a(g)(1)(D) provides for a civil remedy whenever an agency "fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual." Bettersworth asserts that the defendant agencies kept information on him that was unnecessary to the agencies' mandated purpose, in violation of subsection 552a(e)(1), and that the agency maintained records describing Bettersworth's exercise of his First Amendment rights, in violation of subsection 552a(e)(7). Beyond these general assertions, Bettersworth does not describe what portions of which

16

records maintained by which agencies show such violations. Bettersworth simply states that the cause of action is supported by his affidavit. Bettersworth then relies upon the district court's failure to address this claim in detail to excuse his own duty to brief it on appeal.

Federal Rule of Appellate Procedure 28 requires that appellate parties provide cogent argument, supported by citation to relevant authorities, statutes, and the record, for all points raised on appeal. Without such argument, this Court is in no position to provide any meaningful review. In the absence of such briefing, we decline to address Bettersworth's claim that the district court erroneously dismissed his § 552a(g)(1)(D) claim. *See*, *e.g.*, ***Matter of T-H New Orleans Ltd. Partnership***, 116 F.3d 790, 796 (5th Cir. 1997); ***Meadowbriar Home for Children, Inc. v. Gunn***, 81 F.3d 521, 532 (5th Cir. 1996).

## CONCLUSION

The district court's order granting summary judgment in favor of the defendants (the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, and the Federal Reserve Bank of Kansas City) and dismissing plaintiff Bettersworth's Privacy Act claims with prejudice is AFFIRMED.